UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-489-BR

| | |
|---|---|
| DR. HAROLD DIXON individually and on behalf of DIXON LIVING TRUST, | ) ) ) |
| Petitioners-Plaintiffs, | ) ) |
| v. | ) ) ) |
| TOWN OF COATS AND THE BOARD OF ADJUSTMENTS FOR THE TOWN OF COATS, CHARLES BYRD, chairman of the Board of Adjustments, in his official capacity, and Board of Adjustments members JOHN SPEARS, MAX MATTHEWS, ALLEN MOSBY, and KEVIN HAYNES, in their official capacity, and Coats Planning and Zoning Director LORA STEPHENSON, in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Respondents-Defendants. | ) |

**O R D E R**

This matter is before the court on cross-motions for summary judgment, filed on 30 September 2009. With regard to plaintiffs' motion, defendants filed a response in opposition, plaintiffs did not file a reply, and the time within which to do so has expired. With regard to defendants' motion, plaintiffs did not file a response, and the time within which to do so has expired. The motions are ripe for disposition.

I. FACTUAL AND PROCEDURAL BACKGROUND

On or about 6 November 1985, plaintiff Harold Dixon ("Dixon") purchased a tract of real property ("the property") located at 106 E. Main Street in defendant Town of Coats, North Carolina ("the Town"). (Dixon Dep. at 66, 194.) Dixon subsequently transferred the property to Dixon Living Trust ("the Trust"), which is now the sole owner of the property. (Id.) Dixon is "the settler

and co-trustee of" the Trust. (Am. Compl. at 1 ¶ 1.)[1] There is a building roughly 700 square feet in size on the property. (Dixon Dep. at 60.) Plaintiffs have leased the property for various uses over the years, including for use as a residence on several occasions, and to various commercial enterprises such as a fish market, a florist shop, a flea market, and a beauty parlor. (Dixon Dep. at 37-43, 69, 78-79.) The property has also been vacant for periods of time. (Id. at 69, 81-83, 95.)

From on or about 15 June 2003 to January 2004, plaintiffs leased the property to Jamie Noyola for use as a church. (Dixon Dep. at 81-83 & Exh. 3 (accounting balance sheet).) This was the first time the property had been used as a church. (Dixon Dep. at 49-50.) From approximately July 2004 to April 2005, plaintiffs leased the property to Jessie Walker, who also used the property as a church. (Id. at 88-89 & Exh. 5 (accounting balance sheet).) The property was vacant from April 2005 to August 2005. (Dixon Dep. at 95.)

On 14 July 2005, the Town adopted a zoning ordinance ("the Ordinance") which placed the property in a six-block area called the Mixed-Use Village District ("MUV") in downtown Coats. (Stephenson Dep. at 12, 14-16, 21.) In August 2005, plaintiffs leased the property to Linda Wood for use as a church; however, she never actually used the property as she terminated the lease shortly thereafter. (Dixon Dep. at 90-95 & Exh. 7 (lease between Wood and plaintiffs; 9/2/05 letter from Wood terminating the lease).) In December 2005, plaintiffs leased the property to Rita Gethers (subsequently Rita Williams) for use as a church. (Dixon Dep. at 98-99.) When Gethers went to

---

[1] Because plaintiffs have failed to consecutively number the paragraphs in their amended complaint from beginning to end in the customary manner, the court is forced to cite to both the page number as well as the paragraph number that appears on the cited page.

Case 5:08-cv-00489-BR   Document 39   Filed 06/09/10   Page 2 of 14

the Town to have water service turned on at the property, defendant Lora Stephenson[2] ("Stephenson") denied Gethers' request, because the property was not zoned for church use. (Stephenson Dep. at 19-20.) Stephenson later learned that the property had previously been used as a church, and so she conducted a review to determine whether Gethers' church would be a "grandfathered" use. (Id. at 23-24.) She found, based on water usage and power records, that the property had been unoccupied for more than 60 days, and therefore that use of the property for a church was not "grandfathered." (Id. at 26-28.)

Dixon then went to the Town Planning Board and asked that Gethers be allowed have a church at the property. (Dixon Dep. at 131-33 & Exh. 11(1/5/06 Town Planning Board meeting minutes).) The Planning Board informed Dixon that it could not decide the issue, but some board members asked Stephenson to "try to work with Dr. Dixon on some way to get this worked out." (Id.; Stephenson Dep. at 32-33.) Stephenson agreed to let Dixon make repairs to the building and property and to lease the property for use as a church "for one time, . . . . [b]ut once that church closed down, that would be it." (Stephenson Dep. at 33.) On or about 16 March 2006, Dixon submitted an "Application for Zoning Permit." (Dixon Dep. Exh. 10 (3/16/06 permit application).) Stephenson approved the application, allowing Dixon until 1 April 2006 to begin work on the property. (Stephenson Dep. at 32-33 & Exh. 2 (7/15/08 Findings of Fact by Coats Board of Adjustment).)

Harnett County issued a Certificate of Occupancy for the property on or about 12 July 2006 and Gethers' church moved in shortly thereafter. (Dixon Dep. pp. 143-44 & Exh. 14 (7/12/06 Harnett County Certificate of Occupancy).) Gethers rented the property until May 2008. (Dixon

---

[2] During the time period relevant to the complaint, Stephenson was employed by the Town as its Zoning Administrator. (Stephenson Dep. at 8-9.)

3

Dep. at 99.) Shortly after Gethers vacated the property, plaintiffs signed a lease with another church group. (Id. at 121.) When a representative of that group went to the Town to have water service turned on, Stephenson told them that the property was not zoned for church use and denied their request. (Id.) Dixon submitted a written request to defendant the Board of Adjustments ("the Board") for a hearing, which was scheduled for 15 July 2008. (Stephenson Dep. at 59.) The Board voted to uphold Stephenson's decision, and subsequently issued a written decision setting out its findings of fact and conclusions which was signed by the Board chair and served on Dixon. (Dixon Dep. at 164 & Exh. 18 (7/15/08 Board Minutes); Stephenson Dep. Exh. 2.)

The Town created the MUV to "accommodate higher density, mixed use development" and "encourage attractive storefront retail, professional office, and upper-story dwelling units." (Ordinance § 6.3.1.) Permitted uses in the MUV include professional offices, retail establishments, restaurants, artists' studios and "cultural facilities such as libraries or museums." (Id. § 6.3.2.) Conditional uses include government and civic facilities, residences, and parks. (Id.) Religious assemblies are neither a permitted nor a conditional use within the MUV, and there are currently no such organizations in the MUV. (Id. § 6.3; Defts.' Exh. 5 (1st Suppl. Answs. to Pls.' Interrogatories).) Prior to the adoption of the MUV, the property was located in a "Central Business" district which also did not permit religious assemblies since the Ordinance was first enacted in 1984. (Stephenson Dep. at 24 & Exh. 2.) The Ordinance does permit religious assemblies in three other zoning districts within the Town. (Ordinance §§ 6.1.3, 6.2.3, 6.7.2.) There are ten such organizations located within the Town limits; none of them is located in the MUV. (Defts.' Exh. 5.) The Town's population is between 1,600 and 2,000 people. (Dixon Dep. at 179.)

4

Dixon is not and has not been a member of any of the congregations that used or sought to use the property for religious services. (Dixon Dep. at 153.) Plaintiffs have not tried to lease the property during the pendency of the instant action, but have indicated that they intend to limit its rental to "a Christian church[.]" (Id. at 192-93.) On several occasions, Dixon has been informed that he has the right to seek a variance of the zoning applicable to the property or to request an amendment to the Ordinance to allow religious organizations, but plaintiffs have never requested a variance or an amendment to the Ordinance. (Stephenson Dep. at 55-56, 61; Dixon Dep. at 114, 150-51.)

Plaintiffs filed the instant action in Harnett County Superior Court on 3 September 2008, and defendants timely removed the action to this court. The amended complaint, filed 16 January 2009, seeks review pursuant to N.C. Gen. Stat. § 160A-388 of the 15 July 2008 decision by the Board of Adjustments denying use of the property as a church, seeks a declaratory judgment invalidating the Ordinance on the grounds that it violates the North Carolina Constitution and the First and Fourteenth Amendments to the United States Constitution, and also contains claims under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. (Am. Compl. at 2 ¶ 1 - 7 2nd ¶ 3.[3]) Plaintiffs seek declaratory relief as well as monetary damages and attorney fees. (Id. at 8.)

## II. DISCUSSION

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of

---

[3] Page 7 of the amended complaint contains several paragraphs with the same numbers.

law. Fed. R. Civ. P. 56(c); Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Id. In making this determination, the court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate ." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

B. RLUIPA Claim(s)

The exact nature of plaintiffs' RLUIPA claim(s) is not entirely clear, as plaintiffs allege only that they "suffered an injury from the actions of the [defendant]s and [are] entitled to damages under RLUIPA." (Am. Compl. at 7.) However, for purposes of the instant case, the parties agree that RLUIPA provides two causes of action: a "substantial burden" claim, and an "equal terms" claim. (Br. Supp. Pls.' Mot. Summ. J. at 11; Br. Supp. Defts.' Mot. Summ. J. at 12.)

Defendants challenge plaintiffs' standing to bring any claim under RLUIPA.[4] Standing is a "fundamental component of a court's subject matter jurisdiction." N.C. Motorcoach Ass'n v. Guilford County Bd. of Educ., 315 F. Supp. 2d. 784, 791 (4th Cir. 2004). To satisfy Article III standing requirements, a plaintiff must show that: (1) "the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

---

[4] Defendants actually contend that plaintiffs lack standing to assert any constitutional claims or claims under RLUIPA or § 1983. (Br. Supp. Defts.' Mot. Summ. J. at 11.) However, defendants only brief the standing issue with regard to the RLUIPA claim(s), and thus the court addresses plaintiffs' standing only as to those claim(s). Defendants do not contest plaintiffs' standing to seek review "of the Board's decision to affirm Stephenson's decision to deny [plaintiffs'] request to allow a church at the [p]roperty[.]" (Br. Supp. Defts.' Mot. Summ. J. at 11-15.)

6

imminent, not conjectural or hypothetical;" (2) "there [is] a causal connection between the injury and the conduct complained of;" and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). In addition to Article III standing requirements, there are prudential standing requirements. Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Elk Grove Unified School District v. Newdow, 542 U.S. 1, 12 (2004) (quotations omitted). RLUIPA provides that "[s]tanding to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution." 42 U.S.C. § 2000cc-2(a).

    1.    *Substantial Burden Claim*

RLUIPA prohibits local governments from placing a "substantial burden" on religious practice by land use ordinances:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution –
>     (A) is in furtherance of a compelling interest; and
>     (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). RLUIPA defines the phrase "religious exercise" to include "the use, building, or conversion of real property for the purpose of religious exercise . . . ." 42 U.S.C. § 2000cc-5(7)(B); see also Reaching Hearts Intern., Inc. v. Prince George's County, 584 F. Supp. 2d 766, 785 (D. Md. 2008) (noting the "broad application" of RLUIPA).

Defendants cite to two cases to support their contention that – as private landowners whose "own religious exercise was [not] affected in any way by the" Ordinance – plaintiffs lack standing to assert a substantial burden claim under RLUIPA.[5] (Br. Supp. Mot. Summ. J. at 14.) In Berry v. Jefferson Parish, 326 Fed. Appx. 748, 751 (5th Cir. 2009), the Fifth Circuit dismissed a RLUIPA claim[6] brought by private landowners who were unable to sell their land to a "Christian-affiliated developer" when the land was rezoned, preventing the developer from using the land as it desired.[7] However, the Fifth Circuit did not dismiss the claim on the ground that a private landowner whose personal religious beliefs are unaffected by a zoning ordinance can never bring a RLUIPA claim; it emphasized that it dismissed the claim "only on the basis that the [landowner]s have not adequately asserted the requisite elements of standing[.]" Id. at 751. Likewise, in recognizing that a "substantial burden" on the exercise of religion under RLUIPA is one that imposes "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly[,]" the Eleventh Circuit did not hold that only religious adherents may bring RLUIPA claims. Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (two synagogues had standing under RLUIPA to challenge their forced removal from town's business district, but lacked standing under RLUIPA to challenge ordinance which prohibited religious assemblies from town's tourist district, as neither synagogue "is located in the tourist district, and neither [synagogue] has concrete and specific plans to locate in there").

---

[5] Although plaintiffs briefly assert that "the MUV ordinance places a substantial burden on the[ir] . . . exercise of religion," (Br. Supp. Pls.' Mot. Summ. J. at 12), the court agrees with defendants that plaintiffs did not allege a substantial burden on *their own* religious exercise in their amended complaint, (Br. Supp. Defts.' Mot. Summ. J. at 12), and finds that the evidence does not support such a claim.

[6] It is unclear from the Berry opinion what type of claim the plaintiffs were asserting.

[7] The developer wanted to "build[] housing for minorities, the elderly, and the disabled." 326 Fed. Appx. at 749.

8

Thus, there is hardly a wholesale ban on private landowners asserting substantial burden claims under RLUIPA as defendants contend. The Sixth Circuit has held that a landowner corporation that wished to donate property to a religious organization for religious use "clearly has standing to challenge the zoning board's decision" prohibiting the desired land use because "religious *use* of land is the core concept protected by" the substantial burden provision of RLUIPA. Dilaura v. Ann Arbor Charter Tp., 30 Fed. Appx. 501, 507 (6th Cir. 2002) (emphasis in original; addressing substantial burden claim). See also Moxley v. Town of Walkersville, 601 F. Supp. 2d 648, 660 (D. Md. 2009) (landowner-plaintiffs lost contract to sell their land to a religious organization because town refused to grant a variance to pursue official capacity claims under RLUIPA; court allowed official capacity RLUIPA claims, including substantial burden claim, to proceed and dismissed personal capacity claims; standing not analyzed). Plaintiffs have alleged that they "suffered foreseeable financial harm" when they lost a tenant who could not use their property for the tenant's desired purpose due to the Ordinance's prohibition of religious assemblies within the MUV, and the court concludes plaintiffs have standing to assert this claim. While defendants raise valid concerns regarding the extent of their liability for any alleged RLUIPA violation – noting that plaintiffs have taken no steps to lease the property to anyone else and have not shown that a religious use is the only appropriate use for the property, (Br. Supp. Defts.' Mot. Summ. J. at 15) – this does not deny plaintiffs standing to assert a substantial burden claim under RLUIPA.

However, with regard to the merits of plaintiffs' substantial burden claim, the court finds that summary judgment for defendants is appropriate. "[I]n the context of RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious

9

exercise – including the use of real property for the purpose thereof within the regulated jurisdiction generally – effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003); see also Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (citing definition set forth in Urban Believers); Reaching Hearts, 584 F. Supp. 2d at 785 (same). Thus, a

> ban on churches in [a particular] zone cannot in itself constitute a substantial burden on religion, because then every zoning ordinance that didn't permit churches everywhere would be a *prima facie* violation of RLUIPA. Religious organizations would be better off if they could build churches anywhere, but denying them so unusual a privilege could not reasonably be thought to impose a substantial burden on them . . . . Unless the requirement of substantial burden is taken seriously, the difficulty of proving a compelling governmental interest will free religious organizations from zoning restrictions of any kind.

Petra Presbyterian Church v. Village of Northbrook 489 F.3d 846, 851 (7th Cir. 2007) (citations omitted). In the instant case, plaintiffs have not shown that prohibiting religious assemblies within a six-block area of the Town renders religious exercise effectively impracticable within the Town as a whole, and thus have not shown that the MUV places a substantial burden on religious exercise.

2. *Equal Terms Claim*

RLUIPA also prohibits discrimination against religious assemblies and requires that religious assemblies be treated on "equal terms" with other assemblies:

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution . . . . [or] that discriminates against any [religious] assembly or institution[.]

42 U.S.C. § 2000cc(b)(1)-(2).

The court agrees with defendants that dismissal of plaintiffs' equal terms claim is appropriate. Defendants cite to Lighthouse Institute for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 270 (3rd Cir. 2007), cert. denied, __ U.S. __, 128 S. Ct. 2503 (2008), which held that

10

a plaintiff asserting an equal terms claim under RLUIPA "must show . . . it is a religious assembly or institution[.]"  See also Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1307 (11th Cir. 2006) (outlining four elements of an equal terms claim, one of which requires the plaintiff to "be a religious assembly or institution").  Dixon contends that being "a religious benefactor with a specific religious vision and the willingness to use his resources and property to spread his Christian vision and advance his religious message" makes him "a religious 'institution' as contemplated by the RLUIPA[.]"  (Br. Supp. Pls.' Mot. Summ. J. at 17.)  However, plaintiffs fail to cite to any case law to support this contention, and the court declines to make such a finding.  Because plaintiffs are not a religious assembly or institution, the court will dismiss this claim.

C.  Constitutional / 42 U.S.C. § 1983 Claims

Title 42, United States Code, "Section 1983 provides a cause of action for 'person[s] within the jurisdiction' who have been 'depriv[ed] of any rights, privileges, or immunities secured by the constitution and laws' of the United States by a person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State.'"  Chabad of Nova, Inc. v. City of Cooper City, 575 F. Supp. 2d 1280, 1291 (S.D. Fla. 2008) (alterations in original; quoting and citing 42 U.S.C. § 1983).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)).  Thus, the court analyzes plaintiffs' § 1983 claim as asserting violations of the First and Fourteenth Amendments.

"The Plaintiffs[] respectfully contend that the . . . Ordinance . . . facially violates the First Amendment's Freedom of Speech Clause, Establishment Clause, and Free Exercise Clause in that

11

it specifically prohibits facilities advocating religious teachings from the affected zone. The [O]rdinance amounts to a prior restraint on the Plaintiffs[]' speech and otherwise unconstitutionally infringes on the rights of the Plaintiffs[] to speak freely and freely practice religion." (Br. Supp. Pls.' Mot. Summ. J. at 6-7.) The court concludes that, as with plaintiff's substantial burden claim under RLUIPA, this claim must fail. "The Establishment Clause simply does not restrict [towns] from making land use decisions[.]" Christ College, Inc. v. Board of Sup'rs, Fairfax County, No. 90-2406, 1991 WL 179102, *7 (4th Cir. Sept. 13, 1991) (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 305 (1985); First Assembly of God v. City of Alexandria, 739 F.2d 942, 944 (4th Cir. 1984) (affirming district court's dismissal of First Amendment claim based on local government's denial of application for a special exception to zoning laws to build and operate a religious school in a residential-zoned area)).

> The fact that local regulations limit the geographical options of a religious [institution], however, does not prove that any party's right to free exercise is thereby burdened. There must at least be some nexus between the government regulation – here, a zoning law – and impairment of ability to carry out a religious mission. It is not enough that an entity conducting a religious program or mission would prefer to locate on [a particular] property. That preference must be linked to religious imperatives.

Id.

As noted, plaintiffs also contend defendants violated the Fourteenth Amendment.

> [T]he Equal Protection Clause of the Fourteenth Amendment . . . provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws" – by treating churches in a manner less favorable than that of nonreligious assembly uses . . . . "Absent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land use context, a plaintiff must demonstrate governmental action wholly impossible to relate to legitimate governmental objectives." Forseth v. Village of Sussex, 199 F.3d 363, 370-71 (7th Cir. 2000); see also City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985) (unless a statute classifies by race, alienage, or national origin or impinges on fundamental constitutional rights, "[t]he general rule is that legislation is presumed to be valid and

12

> will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest") . . . . As [with plaintiffs' RLUIPA substantial burden claim], . . . any burdens on religious exercise imposed by the [Ordinance] are both incidental and insubstantial . . . . Whatever the obstacles that the [Ordinance] might present to a church's ability to locate on a specific plot of . . . land, they in no way regulate the right, let alone interfere with the ability, of an individual to adhere to the central tenets of his religious beliefs.

Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 766 (7th Cir. 2003) (some citations and alterations in original omitted). Accordingly, summary judgment for defendants on the § 1983 claim is appropriate.

D.  North Carolina Constitution Claim

Plaintiffs allege that the Ordinance violates Article I, Section 13 of the North Carolina Constitution, (Am. Compl. at 4 ¶ 2, 5 ¶ 2), which provides:

> All persons have a natural and inalienable right to worship Almighty God according to the dictates of their own consciences, and no human authority shall, in any case whatever, control or interfere with the rights of conscience.

North Carolina's appellate "courts have held that the religious freedoms protected by this provision are co-extensive with those protected by federal law." State v. Carignan, 178 N.C. App. 562, 2006 WL 1984426, *3 (N.C. App. July 18, 2006) (table) (citing In re Williams, 269 N.C. 68, 78, cert. denied, 388 U.S. 918 (1967)). Accordingly, for the same reasons the court dismisses plaintiffs' federal constitutional claims, the court concludes summary judgment is likewise appropriate as to this claim.

III.  CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is DENIED. Defendants' motion for summary judgment is ALLOWED IN PART, and plaintiffs' RLUIPA and § 1983 claims are DISMISSED, along with their request for declaratory judgment. Pursuant to 28

13

U.S.C. § 1441(c), the court concludes a remand of plaintiffs' appeal pursuant to N.C. Gen. Stat. § 160A-388 is appropriate, and that appeal is remanded to Harnett County Superior Court. The Clerk is hereby DIRECTED to mail a certified copy of this order to the Clerk of the Harnett County Superior Court pursuant to 28 U.S.C. § 1447(c) and close this case.

This 9 June 2010.

W. Earl Britt
Senior U.S. District Judge